My name is Mark Meyer. I'm from Great Falls, Montana, and I'm the CJA counsel representing the appellant Judy Laverdure. Judy Laverdure was indicted in the state of Montana on a three-count indictment, charged with conspiracy to distribute methamphetamine during the years 2000 to 2009, possession with the intent to distribute 500 grams or more of methamphetamine, and the distribution of 500 grams or more of methamphetamine. Our first issue is that the evidence that was presented at trial established not the charged conspiracy ranging from 2000 to 2009, but that it established at least the existence of at least two conspiracies, and that Judy Laverdure was prejudiced by the evidentiary spillover from one conspiracy to the other. The – as we indicated in our – What was the prejudice, even if there were merit to the substantive argument? What would be the prejudice? Because she knew in advance about the sangry evidence and the other evidence, and she also had her motion in limine on Operation Speed Trap, which I realize is the second issue. But what would be the actual prejudice to her in this case? The actual prejudice is the evidence that was presented was strictly through the testimony of individuals who had purchased – who testified they purchased methamphetamine from her. The fact that there was no – any evidence of recorded drug transactions, any drugs seized from her possession. The case was predicated solely on the testimony of individuals who testified they purchased methamphetamine from Mrs. Laverdure. A number of them testified they purchased and used methamphetamine with Mrs. Laverdure, and that the – those were the witnesses who were related to her. There's also testimony from Ms. Linda Reynolds and Fernando Mangia, both of whom had numerous prior drug convictions. And the prejudice came in the fact that the first witness who testified was the FBI agent, Niedgrenhaus, who was the lead agent on the Operation Speed Trap, who took the stand and testified as to what was involved in the Operation Speed Trap. The fact that it was an investigation into the importation of methamphetamine into the state of Montana through Yakima, Washington. The fact that that investigation focused on Victor Sesato and Danny Sangre, and that they believe they were importing the methamphetamine into Montana from Yakima, Washington, by hiding it in the spare tires of cars. They believe that they, Sesato and Sangre, utilized a garage that Mrs. Laverdure had control over to remove the methamphetamine and then testified that he – they approached Mrs. Laverdure without a search warrant. She granted them permission to search the garage, and they did not find any drugs. But Agent Niedgrenhaus testified they found a number of newspapers, tires cut open, and newspapers from Yakima, Washington. So the fact – the prejudice would be that that testimony by Agent Niedgrenhaus laid the foundation and actually bolstered the testimony of the subsequent witnesses who testified they purchased methamphetamine from Mrs. Laverdure. That was a long, long way around that, Your Honor. But that would be some substance of the prejudice that resulted from that introduction of that evidence. As we indicated in our brief, the conspiracy charged by the government was, you know, the Hubb and Spolt conspiracy, and cited the court, the United States Supreme Court, and Cody Ocas, as well as the 11th Circuit's Chandler decision. Our argument is that the separate spokes, if you will, of the conspiracies, that was the – all united around the one Hubb, Judy Laverdure, but there was in the absence of evidence tying all those spokes, particularly the Operation Speed Trap evidence, to the other individuals who took the scan and testified regarding purchasing methamphetamine from Judy Laverdure. And that, you know, cited the Chandler decision from the 11th Circuit, wherein the court made the statement that Cody Ocas makes it clear that a rimless wheel conspiracy is not a single general conspiracy, but a series of multiple conspiracies between the common defendant and the other defendants. We've also cited the court to the Doradas decision with respect to the existence of a variance where one conspiracy is charged, but in actuality the evidence establishes the existence of two conspiracies. And the other points to make with respect to the existence of these two conspiracies is the fact that really there couldn't have been any interdependence between the two conspiracies because the Operation Speed Trap conspiracy necessarily ended when Victor Sesedo and Danny Sangre were arrested, prosecuted, and convicted and sentenced to prison. And it's only years later where the other defendants can understand and testify regarding their interactions and their dealings with Judy Laverdure. Certainly that the success or failure of the subsequent conspiracy, there was no agreement with any of the principals involved in the Sesedo-Sangre conspiracy, and the success of the second conspiracy wasn't necessarily dependent on anything that happened with respect to the Sesedo-Sangre conspiracy. Also, I think we pointed to the testimony at trial by Fernando Mangia, who was one of the government's witnesses who testified that at a certain point in time he purchased methamphetamine from Judy Laverdure and then went on to testify that at some point the tables turned and she was selling methamphetamine for us. I believe that testimony also establishes the existence of the separate conspiracy from the Operation Speed Trap evidence. In addition, Your Honors, we've also raised the fact that the evidence pertaining to the Operation Speed Trap was other acts of evidence that this report erred in admitting under Rule 404, as well as that that evidence should have been excluded given the undue prejudice under Rule 403. I believe I've already touched on the prejudice to Judy Laverdure that resulted from the introduction of that evidence. And the same argument would hold true with respect to the second issue we've raised here with respect to the other acts of evidence. The third issue we've raised is whether or not the district court erred in determining Judy Laverdure's base defense level. I've set that forth in our briefs. I really don't have anything to add with respect to that particular issue. And if the court has no questions, I preserve the remainder of my time for rebuttal. Thank you. Thank you. May it please the Court, I'm Carl Rosted. I'm with the U.S. Attorney's Office out of Great Falls and I work as trial counsel as well as appellate counsel in this case. I won't strain the patience of the Court by reiterating everything that's in my principal brief, but I would like to turn to what Ms. Laverdure raised in her reply brief, trying to square her facts with a previous decision of this course called Durati's where there was a break. Mr. Rosted, you can argue the case any way you want, but it seems to me what we're really concerned with, it looks like there was one overall conspiracy charge. There were two conspiracies that were proved. But the question would be whether there was any prejudice to Ms. Laverdure as a result of that. Well, and I certainly would argue, Your Honor, that there wasn't. For one thing, the evidence was, even if you kept out speed trap, what Ms. Laverdure fails to appreciate is the testimony to which she neither objected nor sought to exclude of a woman named Mulaney Sangre who started buying methamphetamine from Judy in the late 1990s. And she was the money holder for Sangre and Salcedo. And she testified, and I can point the court to the transcript because I think it's really important because it shows there are no two conspiracies. It's tab 59 of the excerpt of record, and on page 43 and 44 of the transcript, she was asked, do you know where they kept the drugs during they were operating in Great Falls? She said, at a shop on Upper River Road and also at Carmen and Puppet's house. Puppet is Judy's father who is identified in the indictment as a co-conspirator. And, again, we're talking the late 90s here. And this is Sangre and Salcedo storing drugs at Carmen and Puppet's house. And I go on to ask, did they keep it in Judy's garage? Judy didn't have a garage, and that would be then I clarified that that was Judy's, that was Lavender's garage, Puppet's and Carmen's. So this case was charged, Your Honors, as an organizational conspiracy dealing with the Lavender family. As you can see from the transcript, the Lavender family was selling to their own relatives. They were buying from their relatives. This went on for years as a fairly large, by Great Falls standards, methamphetamine distribution. And the argument that there's two conspiracies simply isn't the case. It's always focused on Judy Lavender and the Lavender family. Their suppliers come and go, and their buyers come and go, and you can break every conspiracy down into bits and pieces if we want to apply that kind of standard, but I don't think it's the standard to apply. So I would say, Your Honor, number one, there were no two conspiracies. It's one conspiracy going back, dealing with Judy and the various people around her, most particularly her mother and father, who were also dealing with methamphetamine during these early years and all the way up through the end of the indictment. But I do agree with you, Your Honor, that even if you said there's two conspiracies, what prejudice is there? We were attempting to show the scope and substance of her drug-dealing activities because we had a mandatory minimum amount to prove, and we only had historical evidence, and many of the people we were calling were family members who tended to minimize, when they got on the stand and looked her in the eye, how much they'd bought. We attempted to bring it in and impeach them, but as you well know, impeachment evidence is not direct evidence, so it was very important for us to get a certain amount of circumstantial evidence as to the length and amount she was dealing with, and that's the reason that it was so probative. All relevant evidence is prejudicial, obviously, but it certainly didn't prejudice her by having testimony about Sangre and Salcido. If it had, I'm sure Ms. Lavender would have objected to Mullaney's testimony about storing drugs at their house, which was corroborated by her husband in later testimony. That would be our position, Your Honor. I, too, would not bother reiterating what's in my brief regarding how we proved the amount, but I believe that the judgment is sound, and we would ask the Court to affirm it. You've got some time. Just a brief point, Your Honor. The motion in limi sought to exclude any evidence pertaining to Operation Speed Trap. I believe the trial testimony from Mullaney Sangre was that she was intimately involved with holding money for Victor Salcido and Danny Sangre, and I guess it would be our position that, granted, we did not renew an objection at trial to that testimony on that basis, but it would fall within the scope of the motion in limi we filed, and just would reiterate the fact that the prejudice was the fact that the FBI agent meeting house, the face and the driving investigative agent for the Operation Speed Trap, laid the groundwork regarding what occurred with respect to Operation Speed Trap, laid the groundwork to, as a practical matter, bolster the subsequent testimony of the various witnesses who testified they purchased methamphetamine from Mrs. Lafter. I don't have anything else to add unless the Court has any further questions. No. Thank both counsel this morning for coming over. The case just argued, United States v. Labrador, is submitted and we're adjourned for the morning.
judges: Hall, Thompson, McKeown